

# THE ATTORNEY GENERAL
## OF TEXAS

**JIM MATTOX**
**ATTORNEY GENERAL**

May 10, 1990

Honorable John Whitmire
Chairman
Health And Human Services
    Committee
P. O. Box 12068
Texas State Senate
Austin, Texas 78711

Opinion No. JM-1173

Re: Authority of the Spencer Road Public Utility District to buy land for a public park (RQ-1814)

Dear Senator Whitmire:

You have asked us to address the following question:

> May a municipal utility district, operating under chapter 54 of the Texas Water Code, contract for the purchase of real property to be used as a public park within the district by making payments under the contract from taxes where voters in the district have approved the same?

Municipal utility districts are created under and subject to the authority, conditions, and restrictions of article XVI, section 59, of the Texas Constitution. Water Code § 54.011.

A municipal utility district can exercise no authority that has not been clearly granted by the legislature. Quincy Lee Co. v. Lodal & Bain Eng'rs, 602 S.W.2d 262 (Tex. 1980). The legislature can only grant such a district such powers and rights that come within the contemplation of article XVI, section 59 (the Conservation Amendment), or other applicable provisions of the constitution. Deason v. Orange County Water Control & Improvement Dist. No. 1, 244 S.W.2d 981 (Tex. 1952).

In 1980, the Austin Court of Civil Appeals considered whether a municipal utility district could provide park and recreational facilities (including a community center, three swimming pools, four tennis courts, and a club house) under the provisions of Texas Water Code section 54.201(b)(7). At that time, section 54.201 read in its entirety:

(a) A district shall have the functions, powers, authority, rights, and duties which will permit accomplishment of purposes for which it was created.

(b) A district is authorized to purchase, construct, acquire, own, operate, maintain, repair, improve, or extend inside and outside its boundaries any and all works, improvements, facilities, plants, equipment, and appliances <u>necessary to accomplish the purposes of its creation</u>, including all works, improvements, facilities, plants, equipment, and appliances incident, helpful, or necessary to:

(1) supply water for municipal uses, domestic uses, power, and commercial purposes and all other beneficial uses or controls;

(2) collect, transport, process, dispose of, and control all domestic, industrial, or communal wastes whether in fluid, solid, or composite state;

(3) gather, conduct, divert, and control local storm water or other local harmful excesses of water in a district;

(4) irrigate the land in a district;

(5) alter land elevation in a district where it is needed;

(6) navigate coastal and inland waters of the district; and

(7) <u>provide parks and recreational facilities for the inhabitants in the district</u>. (Emphasis added.)

<u>See</u> Acts 1971, 62d Leg., ch. 84, at 775.

Because of the language limiting the district's authority to that "necessary to accomplish the purposes of its creation," and notwithstanding the statutory provision expressly authorizing districts to acquire all facilities necessary to "provide parks and recreational facilities" for the inhabitants in the district, the court said:

We have concluded that the proposed facilities, which include a community center, three swimming pools, four tennis courts, and a clubhouse, do not further a purpose of section 54.012 of the Water Code <u>or of article XVI, § 59 of the Texas Constitution</u>. (Emphasis added.)

<u>Harris County Water Control & Improvement Dist. No. 110 v. Texas Water Rights Comm'n</u>, 593 S.W.2d 852, 855 (Tex. Civ. App. - Austin 1980, no writ); <u>cf.</u> Attorney General Opinion H-491 (1975) (recreational use of waters and forests, "once developed and conserved," may be within contemplation of the constitution).

The following year, in 1981, this office was asked whether the construction of certain park and recreation facilities by the Upper Guadalupe River Authority, "on its soon to be completed reservoir," would be in furtherance of the purposes for which the district was created. The "facilities" were reservoir areas to be landscaped; areas to be made suitable for swimming, parking, restrooms, boat ramps, picnic tables, lighting, roads, and fencing. (The resulting opinion did not explicitly confirm that payment was to be made from taxes, but, because of the holding of the opinion, that consideration is not relevant here.)

Attorney General Opinion MW-313 (1981) observed in that connection:

> The reservoir in this case is being constructed primarily to control and store water on the Guadalupe River as a surface water supply for the city of Kerrville, in compliance with the constitutional purposes of the district and the statutory priorities of water usage. One secondary use of the reservoir as enumerated by the legislature is recreation and pleasure.

The opinion read the <u>Harris County Water Control and Improvement District</u> case as saying that "recreational facilities <u>per se</u>" are not prohibited, but

> are limited by the standard set out by the court to-wit: '[t]he power to construct recreational facilities must be exercised to further a purpose of section 54.012 [Texas Water Code] to be justified and constitutional.' <u>Id.</u> at 854. The court had previously stated that '[s]ection 54.012 of the Texas Water Code, entitled "Purposes of a

> District," parallels the language of article XVI, § 59(a)(Texas Constitution).' _Id._ at 853. _Implicit in the language of the opinion is a question of the degree of relationship between the recreational facilities and the constitutional purpose of the district_. (Emphasis added.)

Attorney General Opinion MW-313 at 3. The attorney general held construction of the facilities permissible because:

> The _Harris County W.C.I.D. #110_ opinion prohibited construction of a complex of recreational buildings and facilities which were unrelated to the constitutional purposes of the district. It is our understanding that the facilities you propose to build are related to a relatively minor portion of the total reservoir project and serve to promote the full use and enjoyment of the reservoir by the public. We feel that the improvements you propose are ordinary and necessary to the proper control, management, and regulation of public reservoirs and lakes, and are in furtherance of the constitutional purposes of 'the _conservation and development_ of all natural resources of this State, including the control, storing, preservation and distribution of . . . the waters of its rivers and streams, for irrigation, power and _all other useful purposes_.' Tex. Const. art. XVI, § 59(a). (Emphasis in original.)

_Id._ at 4.

Taken together, the 1980 _Harris County Water Control and Improvement District_ case and the 1981 attorney general's opinion teach that the provision of facilities for recreation and pleasure is not among the constitutional purposes for which water districts may levy and expend ad valorem taxes, but that the provision of recreational facilities may be considered a proper secondary activity for a district if furnishing them promotes a constitutional purpose.

In 1985, chapter 54 of the Water Code was amended to add subchapter I. At the same time, section 54.201(b)(7) was changed by adding the words, "subject to subchapter I of this chapter" to the provision that authorized municipal utility districts to provide parks and recreational facilities. Section 54.501 was amended to delete any legislative authority for municipal utility districts to

issue bonds for the purpose of providing parks and recreational facilities. See Acts 1985, 69th Leg., ch. 100, at 538.

Section 54.771(a)(2) of the new subchapter I provisions declares it to be the policy of the state "to encourage the people in municipal utility districts to provide parks and recreational facilities for their use and benefit." Cf. Parks & Wild. Code §§ 25.001 et seq. Section 54.773 states that in addition to the other purposes for which a district is created, a district is created for the purpose of developing and maintaining recreational facilities. It also states that a district is "authorized to accomplish this purpose as provided in this subchapter."

In apparent anticipation of constitutional challenge, subsections (a)(3), (a)(4), (a)(5), and subsection (b), of section 54.771, subchapter I, assert:

> (a) The legislature finds that:
>
> . . . .
>
> (3) within constitutional limitations, the power to enact laws vested in the legislature by Article III, Section 1, of the Texas Constitution is supreme;
>
> (4) there is no constitutional inhibition that would prohibit the legislature from authorizing municipal utility districts to acquire, own, develop, construct, improve, manage, operate, and maintain parks and recreational facilities; and
>
> (5) the general legislative power is adequate to support the enactment of this subchapter without reference to any specific constitutional authorization.
>
> (b) This subchapter is cumulative of other laws governing municipal utility districts and is not limited by a provision of any other law. This subchapter provides complete authority to a municipal utility district to develop and maintain recreational facilities. (Emphasis added.)

The legislature cannot overturn by declaration or enactment a construction of the constitution previously pronounced by the supreme court. Milam County v. Bateman,

54 Tex. 153 (1880); see also Langever v. Miller, 76 S.W.2d 1025 (Tex. 1934); 67 Tex. Jur. 3d Statutes § 156 at 789.

Prior to the enactment of the subchapter I "parks and recreation" provisions respecting municipal utility districts, the Texas Supreme Court delineated the authority of the legislature to delegate power to a municipal utility district created pursuant to article XVI, section 59, of the Texas Constitution. In Deason v. Orange County Water Control & Improvement Dist., supra, the Texas Supreme Court had before it a legislative enactment declaring that "water control and improvement districts now existing, or hereafter to be created, may include in their purposes and plans all works, facilities, plants, equipment, and appliances in any and all manner incident to, helpful or necessary . . . to purchase, own, and operate fire-fighting equipment and appliances." In another case, Parker v. San Jacinto County Water Control & Improvement Dist., 273 S.W.2d 586 (Tex. 1954), the statute at issue delegated to a water control and improvement district the power to install a sanitary and storm sewer disposal system.

Both cases concerned the issuance of tax bonds, and in both cases the statutory provisions were attacked as unconstitutional. In the Deason case, concerning fire fighting equipment, the court held:

> Section 59(a) . . . contains no language which would support a holding that the people in enacting the amendment contemplated that a water control and improvement district created for the purpose of conserving and developing the natural resources of the district would have the power to provide fire-fighting equipment and appliances for a town within said district.

Deason at 984. In the Parker case, the court said:

> Plaintiffs' attack upon the statute fails because the power to erect and operate a sewerage disposal plant is clearly within Sec. 59a, Art. 16, Texas Constitution. The water brought into the area by the district is not destroyed by use but must be returned to the hydrological cycle. The Conservation Amendment to our State Constitution would certainly permit the purification of water before it returns to the groundwater table and the river system. The protection of the purity of the waters of this State is a

> public right and duty under the Conservation Amendment.

Parker at 586.

The difference in the results of the two cases is explained by the observation of the Deason court that the fundamental purpose in construing a constitutional provision is to ascertain and give effect to the intent of the framers of the constitution. Although the incidental use of already-owned property belonging to a water control and improvement district for park and recreational purposes may be condoned when it aids the accomplishment of a Conservation Amendment purpose, the constitution contains no language which would support a holding that the people, in enacting article XVI, section 59, contemplated that a municipal utility district created for the purpose of conserving and developing the natural resources of the district would have the power to use taxes to provide parks and recreation facilities unrelated to the conservation and development of natural resources. Harris County Water Control and Improvement District, supra.

Information accompanying your request for an opinion indicates that the request is prompted by the wish of Spencer Road Public Utility District, a municipal utility district in Harris County,[1] "to acquire some six acres of land within its boundaries to develop and maintain a park." You have also supplied information indicating that the park would include playgrounds, volleyball and basketball courts, picnic tables and grills, and a jogging trail. In light of that information, we need not consider whether a municipal utility district could use taxes to acquire land for the limited purpose of conservation and development of the natural resources contained therein.

We are constrained to advise you that, in our opinion, a municipal utility district, operating under chapter 54 of the Texas Water Code may not use taxes to purchase real property for the independent purpose of having it used as a public park and developed recreational area, and that the language of subchapter I of chapter 54 is not to be given a reading that would contradict or overrule the construction

---

1. The Spencer Road Public Utility District was created by Acts 1971, 62d Leg., ch. 699, at 2285.

given article XVI, section 59, of the Texas Constitution by the Supreme Court of Texas.[2]

## S U M M A R Y

A municipal utility district operating under chapter 54 of the Texas Water Code may not purchase real property for the independent purpose of having it used as a public park. The language of subchapter I of chapter 54 is to be given a reading consistent with the purposes of article XVI, section 59 of the Texas Constitution.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Bruce Youngblood
Assistant Attorney General

---

2. Following the supreme court's holding in Deason that the constitution did not permit the legislature to delegate to municipal utility districts the power to use taxes to provide fire fighting facilities within the district, article XVI, section 59 of the constitution was amended by the people to allow it. See H.J.R. 42, Acts 1977, 65th Leg., at 3374; Acts 1979, 65th Leg., Table 2, Votes on Amendments to Constitution, at 3267. That avenue is also open, of course, with respect to parks.